IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRADARION JACKSON, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | No. 3:24-CV-2896-K-BW | |
| § | | |
| AARON ROBLEDO; TRENTON § | | |
| FISCHER, CITY OF TERRELL, § | | |
| TEXAS; and SOUTHWESTERN § | | |
| CHRISTIAN COLLEGE, § | | |
| Defendants. § | Referred to U.S. Magistrate Judge[1] | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are multiple Rule 12(b)(6) motions to dismiss Plaintiff Jackson's claims. On December 20, 2024, Defendant City of Terrell (the "City") filed its Rule 12(b)(6) motion to dismiss, (Dkt. No. 6 ("City Mot.")), and supporting brief, (Dkt. No. 7 ("City Br.")). Jackson filed a response to the City's motion on January 24, 2025. (Dkt. No. 17 ("Resp. to City Mot.").) The City filed a reply on February 6, 2025. (Dkt. No. 20 ("City Reply").) Defendant Aaron Robledo filed a Rule 12(b)(6) motion to dismiss on January 29, 2025. (Dkt. No. 18 ("Robledo Mot.").) Jackson filed a response on February 14, 2025. (Dkt. No. 21 ("Resp. to Robledo Mot.").) Robledo did not file a reply. On March 4, 2025, Defendant Trenton Fischer filed a Rule 12(b)(6) motion to dismiss, (Dkt. No. 22 ("Fischer

---

[1] This case was referred to the United States magistrate judge for full case management and for findings and recommendations on dispositive matters pursuant to Special Order 3. (*See* Dkt. No. 3.) On August 23, 2024, it was transferred and reassigned to the undersigned magistrate judge by Special Order 3-354. (*See* Dkt. No. 19.)

-1-

Mot.")), and accompanying brief, (Dkt. No. 23 ("Fischer Br.")). Jackson filed a response on March 25, 2025. (Dkt. No. 24 ("Resp. to Fischer Mot.").) Fischer did not file a reply. Finally, Defendant Southwestern Christian University ("SWCC") filed a Rule 12(b)(6) motion to dismiss (Dkt. No. 37 ("SWCC Mot.")) and supporting brief (Dkt. No. 38 ("SWCC Br.") on May 24, 2025. Jackson filed a response on June 16, 2025. (Dkt. No. 41 ("Resp. to SWCC Mot.").) And SWCC filed its reply on June 27, 2025. (Dkt. No. 42 ("SWCC Reply").)

United States District Judge Ed Kinkeade referred this case to the undersigned magistrate judge for case management. (Dkt. No. 26.) For reasons that follow, the undersigned recommends that the District Judge **GRANT** the City's and SWCC's Rule 12(b)(6) motions to dismiss, **DENY** Fischer's and Robledo's Rule 12(b)(6) motions to dismiss, and allow Jackson to replead his claims against the City and SWCC.

## I. BACKGROUND

Jackson sues two police officers and their employing agencies for injuries he allegedly suffered in connection with his arrest on November 19, 2022. According to Jackson's allegations in the complaint, he led officers in a high-speed chase in connection with a suspected burglary. (*See* Dkt. No. 1 ("Compl.") ¶ 12.) Jackson alleges that he parked in a residential driveway and got out of the car holding his five-year-old daughter. (*Id.*) Jackson was in the backyard of the residence when police arrived, among them Defendants Aarron Robledo (an officer with the SWCC Police Department) and Trenton Fischer (with the Terrell Police Department). (*Id.*

¶ 13.) Jackson alleges that, manifesting an intent to surrender and cooperate with officers' commands, he raised his hands and handed his daughter over to an officer. (*Id.* ¶¶ 13-14.) He further alleges that, while he was handing over his daughter, Fischer began handcuffing Jackson, and officers threw him to the ground. (*Id.* ¶ 15.)

Jackson alleges that, although he was compliant with officer commands and lying on the ground with his hands behind his back, Robledo released his K9 to attack him, and Fischer and others hit and kicked him. (Compl. ¶¶ 16-17.) The K9 bit Jackson on his leg and his backside. (*Id.* ¶ 16.) Jackson alleges that he began "convulsing in pain" from the dog bites and that any movement from that point was not due to resisting police or attempting to flee. (*Id.*) Despite Jackson's pleas to stop the dog, the officers did not interfere. (*Id.*) According to Jackson, the officers also placed their knees on his neck while continuing to punch and kick him. (*Id.* ¶ 18.) At some point during the fray, Jackson was placed in handcuffs, and Jackson alleges that the K9 "attack[]" and "brutality" from officers continued after he had been handcuffed. (*Id.* ¶¶ 18-19.)

Jackson alleges that he suffered serious physical injuries—including a torn tendon in the back of his leg—as a result of "this violent and excessive force." (*Id.* ¶ 20.) Jackson was transported to the hospital for treatment and required approximately 20 stitches to his leg as a result of the K9 bites. (*Id.*) He also alleges to have suffered "severe injuries to his wrists due to the officers excessively tightening his handcuffs beyond what was necessary." (*Id.*) After the hospital treated him, he was transported and booked into the Terrell Jail. (Compl. ¶ 21.)

Jackson filed this lawsuit on November 18, 2024, against Fischer, Robledo, SWCC, and the City asserting multiple causes of action. (*See generally* Compl.) He maintains that Defendants violated his Fourth Amendment rights and makes claims pursuant to 42 U.S.C. § 1983. (*Id.* ¶ 1.) First, he contends that Fischer and Robledo used excessive force against him. (*Id.* at 7.) Second, he avers that the City and SWCC are liable for failure to train, supervise, or discipline. (*Id.* at 9.) Third, he alleges that the City and SWCC are liable for maintaining unconstitutional customs, policies, or practices of allowing excessive force and failing to intervene in the application of excessive force that resulted in his injury. (*Id.* at 13-14.)

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F. Supp. 2d 615, 618 (N.D. Tex. 2012) (first alteration added) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To state a claim upon which relief can be granted and defeat a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins*, 224 F.3d at 498. The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only

determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III.  ANALYSIS

Jackson asserts that all four Defendants violated his constitutional rights.  He alleges that both Fischer and Robledo used excessive force.  Jackson also asserts that SWCC and the City failed to train, supervise, or discipline their officers and maintained unconstitutional customs, policies, and practices.

**A.  Municipal Liability**

The general pleading standards apply to a claim against a municipality.  *See Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) ("There is no heightened pleading standard for § 1983 claims against municipalities.  To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).

"A person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson*, 994 F.3d at 482 (quoting § 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

**1.    Unconstitutional customs, policies, and practices.**

A municipality is a "person" subject to liability under § 1983 only if municipal employees inflicted the deprivation of a constitutional right pursuant to an official policy or custom.  *Monell*, 436 U.S. at 690; *see also Piotrowski v. City of Houston*, 237

F.3d 567, 579 (5th Cir. 2001). Thus, to state a claim for municipal liability, a plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Isolated unconstitutional actions by municipal employees will almost never trigger municipal liability. *Piotrowski*, 237 F.3d at 578. And a municipality cannot be held liable simply on a theory of respondeat superior. *Monell*, 436 U.S. at 691.

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579); *see also Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497 (5th Cir. 2021) ("An 'official policy' may take two forms—either a 'policy statement formally announced by an official policymaker' or a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the

municipality or to an official to whom that body ha[s] delegated policy-making authority.'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)).  And "a plaintiff must allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (quoting *Valle*, 613 F.3d at 542).

### a. City of Terrell

The City argues that Jackson's allegations under a *Monell* theory of liability fail because "Plaintiff does not allege what official policy, practice or custom Terrell implemented that affected Plaintiff, much less how such policy, practice, or custom caused an alleged constitutional violation in the use of force that Plaintiff bases his alleged claims on." (City Br. at 6.)  It further argues that Jackson's allegations also fail to meet the second and third elements because he failed to allege facts to show action by a final policymaker and to establish deliberate indifference. (*Id.*)  Jackson counters that he "sufficiently identified the policies and customs being complained of." (Resp. to City Mot. at 15.)  The undersigned agrees that Jackson failed to plausibly allege that the City is liable under a *Monell* theory.

The Fifth Circuit has stated that "[t]o proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (internal quotations

omitted). Here, Jackson's allegations regarding the policy are vague and conclusory. He does not point to a specific policy and instead vaguely asserts that the City maintains policies such as "[u]sing excessive force[,]" "[p]roviding inadequate training regarding use of force[,]" "[e]mploying and retaining officers who have been know to be abusive[.]" (Compl. at 15.) But he provides no specific facts to supports that the City does in fact have these policies.

Accordingly, because Jackson's *Monell* claim fails on the first prong, the Court should dismiss his claim against the City for unconstitutional policies, practices, and customs. *See Brown*, 985 F.3d at 497 & n.11 (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs" (citing *Zarnow*, 614 F.3d at 168-69)).

### b. Southwestern Christian College

Jackson's *Monell* claim for unconstitutional policies, customs, and practices against SWCC fails for the same reason as his claim against the City.[2] Jackson failed to plausibly plead specific facts regarding such policy. Jackson's policy allegations are conclusory, as he avers that "SWCC maintained, or was deliberately indifferent to, . . . [a] de facto policy of tolerating or ignoring the excessive force of use by its officers, particularly in the deployment of K9s[,]" "[f]ailing to require meaningful oversight or review of incidents involving the use of force or K9 deployment[.]"

---

[2] SWCC noted that because Jackson asserted that SWCC operated under color of state law SWCC would take such assertion as true and argue dismissal under the *Monell* framework. (SWCC Br. at 4.)

(Compl. at 13.) As above, these allegations fail to allege specific facts, therefore, Jackson's claim against SWCC for unconstitutional policy, custom, or practice fails and the Court should dismiss it.

### 2. Failure to train, supervise, or discipline.

"[T]he failure to provide proper training may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). And, although an alleged failure to train (or to supervise) "is a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal liability claim." *Pinedo v. City of Dallas, Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *7 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"To establish a failure-to-train claim, a plaintiff must 'prove that (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'" *Hutcheson*, 994 F.3d at 482 (quoting *Pena*, 879 F.3d at 623).

To show deliberate indifference, a plaintiff normally must allege a "pattern of similar constitutional violations by untrained employees." *Pena*, 879 F.3d at 623 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). But where a plaintiff does

not allege such a pattern, it is still possible to establish deliberate indifference through the single-incident exception. *Id.* at 624.

The single-incident exception is "extremely narrow." *Valle*, 613 F.3d at 549. The "plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered[.]" *Id.* (cleaned up). For a violation to be "highly predictable," the municipality "must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Littell*, 894 F.3d at 624–25 (cleaned up). The single-incident exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Pena*, 879 F.3d at 624.

### a.  City of Terrell

"Showing that a municipality's training program is inadequate requires that the plaintiff 'allege with specificity how a particular training program is defective.'" *Bryan v. City of Dallas*, 188 F. Supp. 3d 611, 620-21 (N.D. Tex. 2016) (quoting *Zarnow*, 614 F.3d at 170). Jackson's allegations against the City under this theory are conclusory. Jackson does not plead any specific facts identifying a particular program or any deficiencies within the program.

Additionally, Jackson fails to sufficiently plead deliberate indifference. He did not plead facts plausibly alleging a pattern of similar constitutional violations by untrained employees and instead pleaded conclusory allegations. (*See* Compl. at 13 ("The City's failures to train, supervise, and discipline its officers amounted to

deliberate indifference to the constitutional rights of individuals[.]").) Therefore Jackson, also fails to plausibly allege the third prong.[3]

Accordingly, the Court should grant the City's motion to dismiss Jackson's for failure to train, supervise, or discipline.

### b. Southwestern Christian College

Jackson's failure to train claim against SWCC suffers the same deficiencies. Jackson failed to identify a particular training program and specific deficiencies of that program. Instead, Jackson makes general assertions without particular facts. For example, he asserts that "SWCC failed to adequately train its officers, including Defendant Robledo, in areas critical to constitutional policing[.]" (Compl. ¶ 41.) Jackson does not plausibly allege sufficient facts to meet the first element of a failure-to-train § 1983 claim.

Jackson's allegations regarding SWCC's "deliberate indifference" are equally conclusory. He does not provide facts and instead avers generally that "[t]he failures of SWCC to train, supervise, and discipline its officers amounted to deliberate indifference to the constitutional rights of individuals, including Plaintiff[.]" (Compl. ¶ 44.) He does not allege any facts addressing a pattern of similar constitutional violations by untrained employees. As such, Jackson also failed to plausibly plead that SWCC acted with deliberate indifference.

---

[3] While it is possible for a plaintiff to allege plausible indifference through the single-incident exception, Jackson's complaint does not appear to plead such exception and thus the undersigned does not address it.

Accordingly, the Court should dismiss Jackson's claim against SWCC for failure to train, supervise, and discipline.

### B. Claims against officers.

Fischer and Robledo each seek dismissal of Jackson's § 1983 claims based on qualified immunity. (*See generally* Fischer Br.; *see also* Robledo Mot.) Robledo additionally argues that Jackson failed to plausibly plead a § 1983 claim at all. (Robledo Mot. at 5.)

"Qualified immunity protects officers from suit unless their conduct violates a clearly established statutory or constitutional right." *Edmiston v. Borrego*, 75 F.4th 551, 558 (5th Cir. 2023) (cleaned up), *cert. denied sub nom. Crandel v. Hall*, 144 S. Ct. 1002 (2024). When an official asserts qualified immunity, "[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (alteration in original) (citation omitted). The plaintiff must plead facts sufficient to create the reasonable inference "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Edmiston*, 75 F.4th at 558 (citation omitted). The Court addresses each prong of the qualified immunity analysis in turn.

#### 1. Constitutional violation.

Jackson alleges that Fischer and Robledo violated his Fourth Amendment rights by applying excessive force. To prevail on an excessive force claim, he must show "(1) injury, (2) which resulted directly and only from a use of force that was

clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (quoting *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009)). Jackson clearly alleges that he suffered an injury, including a torn tendon and punctures, necessitating 20 stitches. (Compl. ¶ 20.) He has plausibly pleaded the first element of an excessive force claim.

"Our precedents recognize that inquiries regarding whether a use of force was 'clearly excessive' or 'clearly unreasonable . . . are often intertwined,' and we consider those questions together[.]" *Darden v. City of Fort Worth*, 880 F.3d 722, 728 (5th Cir. 2018) (first alteration in original) (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)). In excessive force claims, the reasonableness of an officer's conduct depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). We must adopt "the perspective of a reasonable officer on the scene, rather than [judge] with the 20/20 vision of hindsight." *Id.* Our inquiry is "whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "In making this determination, a court should consider the totality of the circumstances, 'including [the *Graham* factors.]'" *Darden*, 880 F.3d at 728-29 (quoting *Graham*, 490 U.S. at 396).

Applying these standards, the undersigned concludes on balance that Jackson has alleged facts supporting an inference that both Robledo and Fischer used excessive force against him. The severity of the crime at issue, weighs in favor of Defendants. Jackson admittedly led officers on a high-speed chase in connection with a suspected burglary. "Leading law enforcement on a vehicle pursuit is a severe offense[.]" *Tafolla v. Rodermund*, No. 3:24-CV-0331-S, 2025 WL 875488, at *3 (N.D. Tex. Mar. 19, 2025) (citing *Salazar v. Molina*, 37 F.4th 278, 281-82 (5th Cir. 2022)).

Considering the next two *Graham* factors, the undersigned accepts Jackson's allegation that he had manifested surrender and cooperation when police first made physical contact with him. (*See* Compl. ¶¶ 13-14.) Likewise, Jackson alleges that Robledo released the K9 to assault him and that Fischer continued punching and kicking him after he was on the ground and had fully submitted to police custody. (*Id.* at ¶¶ 16-18.) Although forcing Jackson to the ground might be reasonable, the allegations that officers initiated or continued physical force against Jackson while he was on the ground and had submitted to custody weigh in favor of finding that force was excessive. *See Tafolla*, 2025 WL 875488, at *3-4. According to facts alleged in the complaint, Jackson was at that later point subdued, *see id.* at *4, and posed no threat of danger or escape. At that point, officers were required to reduce force, but, according to the complaint, that is the point at which Robledo released the K9 onto him and Fischer continued physically assaulting him. (*See* Compl. ¶¶ 15-17.) *See Cooper v. Brown*, 844 F.3d 517, 522-23 (5th Cir. 2016) (finding that the plaintiff was

no longer an immediate threat where he was not suspected of committing a violent crime, had surrendered, and had no weapon on him).

These facts, taken as true, plausibly allege that the use force used was objectively unreasonable. *See Cooper*, 844 F.3d at 524 (finding that defendant's continued allowance of a dog biting the plaintiff who was compliant and non-threatening was objectively unreasonable); *see also Tafolla*, 2025 WL 875488, at *4 (finding that complaint alleged facts showing use of force was excessive and unreasonable when they began punching an arrestee who was already on the ground and subdued). Jackson has plausibly alleged that Robledo and Fischer applied physical force that was excessive and unreasonable and, therefore, has pleaded a claim for a constitutional violation.

### 2. Clearly established law.

Qualified immunity analysis considers whether clearly established law put officials on notice that the constitutionality of the alleged conduct was beyond debate. *See Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011). "When considering whether a defendant's entitlement to qualified immunity, [the Court asks] whether the law so clearly and unambiguously prohibited his conduct that *every* reasonable official would understand that what he is doing violates the law." *Id.* (internal quotation marks and brackets omitted). "To answer that question in the affirmative, [the Court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 371-72 (internal quotation marks omitted).

But "this does not mean that 'a case directly on point' is required." *Id.* at 372 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). Rather, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 372 (quoting *al–Kidd*, 563 U.S. at 741).

The central concept is "fair warning." *Id.* at 372; *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Newman*, 703 F.3d at 763 (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotation marks omitted)). "Furthermore, 'in an obvious case,' the *Graham* excessive-force factors themselves 'can clearly establish the answer, even without a body of relevant case law.'" *Id.* at 764 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)) (internal quotation marks omitted).

At the time of the events alleged in the complaint, caselaw provided notice that officers were prohibited from using excessive force by initiating, increasing, or persisting in the use of serious physical force against a subject who had been subdued and was not resisting arrest. "[The Fifth Circuit] caselaw makes certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Cooper*, 844 F.3d at 524. In *Cooper*, the plaintiff was pulled over by an officer on suspicion of driving under the influence. 844 F.3d at 521. The plaintiff fled on foot, and a police

officer arrived with a K9. *Id.* The K9 found the plaintiff and bit him for one to two minutes. *Id.* While the dog bit him, the plaintiff did not attempt to flee or strike the dog, and he had his hands on the dog's head. *Id.* The officer could see that plaintiff had no weapons. *Id.* The officer defendant ordered plaintiff to roll onto his stomach, and plaintiff complied. *Id.* But still, the officer did not release the dog, who continued to bite. *Id.* The officer "did not order [the dog] to release the bite until after he had finished handcuffing [the plaintiff]." *Id.* The Fifth Circuit affirmed a denial of qualified immunity for the officer and stated that the officer "had 'fair warning' that subjecting a compliant and non-threatening arrestee to a lengthy dog attack was objectively unreasonable." *Id.* at 525. This authority similarly gives fair warning that releasing a K9 to bite a subdued subject—or allowing the K9 to persist in biting a subdued subject—would be unreasonable and excessive force.

      Similarly, Jackson's allegations that Fischer punched and kicked him while he was subdued on the ground state a violation of clearly established law. *See Tafolla*, 2025 WL 875488, at \*6. In *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008), the Fifth Circuit held that it was objectively unreasonable for an officer to slam an arrestee's face into a nearby vehicle when the arrestee was not resisting arrest or attempting to flee. *Id.* at 502. By the time of the events alleged in the complaint, "it was clearly established law that an officer cannot repeatedly punch a suspect once that suspect is already subdued and no longer evading arrest." *Tafolla*, 2025 WL 875488, at \*7 (collecting cases).

Because Jackson's complaint alleges facts that could establish that Robledo and Fischer committed constitutional violations that violated clearly established law, their motions to dismiss should be denied.

## C.   Leave to amend.

Although the undersigned concludes that Jackson has not pleaded claims against the City and SWCC, it recommends that Jackson be given an opportunity to replead those claims.  Jackson has requested an opportunity to replead, and it is not apparent that the pleading deficiencies are entirely incurable.  *See In re Am. Airlines Privacy Litig.*, 370 F. Supp. 2d 552, 567-68 (N.D. Tex. 2005); *see also Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

## IV.  RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the District Judge,

(1)   **GRANT** Defendant City of Terrell's motion to dismiss, (Dkt. No. 6);

(2)   **GRANT** Defendant SWCC's motion to dismiss, (Dkt. No. 40);

(3)   **DENY** Defendant Robledo's motion to dismiss, (Dkt. No. 18);

(4)   **DENY** Defendant Fischer's motion to dismiss, (Dkt. No. 22); and

(5)   Allow Jackson to file an amended complaint within 28 days of the District Judge's resolution of these findings, conclusions, and recommendations or by another deadline established by the District Judge.

**SO RECOMMENDED** on August 13, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

### NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).